Porath vs. The State.

PORATH, Plaintiff in error, vs. THE STATE, Defendant in error.

*May 23 — June 20, 1895.*

| | |
|---|---|
| 90 | 527 |
| †91 | 262 |
| 90 | 527 |
| 99 | 537 |
| 90 | 527 |
| 111 | ¹159 |
| 90 | 527 |
| 115 | ⁴327 |

*Criminal law and practice: Incest: Rape: Preliminary examination: Pleading: Joinder of counts: Election: Evidence: Leading questions: Accomplice: Subsequent offenses: Instructions to jury.*

1. The preliminary examination of a person charged with incest disclosed facts indicating that he had committed rape against the person of his daughter, and an information was filed accordingly, charging in one count the rape and adding thereto a count for incest founded on the same transaction. *Held,* that a plea in abatement of the first count on the ground that defendant had not had a preliminary examination for the offense charged therein, was properly overruled. Sec. 4653, S. & B. Ann. Stats.

2. A count for incest may be joined with one for rape founded on the same transaction. A remark to the contrary in *State v. Shear,* 51 Wis. 460, *held obiter.*

3. Where the joinder in such a case was intended merely to meet the different legal aspects which the evidence might give the case, the trial court rightly, in its discretion, refused to require an election between the counts.

4. The allowance of leading questions to the prosecutrix in this case is *held* not to have prejudiced the defendant so that it should work a reversal.

Porath vs. The State.

5. Although the testimony of an accomplice is the only evidence against the accused, the trial court is not required to direct an acquittal, nor, in the absence of a request therefor, to give any instructions as to the effect of such testimony. ·

6. The fact that one accused of incest used a certain amount of force to overcome the resistance actually made will not enable him to escape punishment for incest, the parties being within the prescribed degree of consanguinity, if the force and resistance used were not sufficient to constitute rape.

7. If, in the commission of the incestuous act, the female was the victim of force, fraud, or undue influence, so that she did not act voluntarily and join in the commission of the act with the same intent that the accused did, she ought not to be regarded as an accomplice. In all such cases, where it is to be proved inferentially, the question of accompliceship is one of fact for the jury.

8. On a prosecution for incest, evidence was admitted tending to show improper relations between defendant and one of his witnesses subsequent to the offense charged. After stating that such evidence was admitted to show the relations of the witness to defendant, so as to throw light upon the credibility of her testimony, the court charged the jury to the effect that they should only consider it as it had a bearing on the question whether defendant was guilty of the offense charged. *Held* error, such evidence not being competent on that question.

Error to review a judgment of the circuit court for Brown county: S. D. Hastings, Jr., Circuit Judge. *Reversed.*

The plaintiff in error was tried upon an information containing two counts: First, for rape committed upon his daughter Ida Porath, July 10, 1891; and the second for incest committed with her on the same date; they not being lawfully married to each other, and the defendant then having a lawful wife, Frederica Porath, still alive, and the said Ida being then and there the daughter of the said defendant and his said wife Frederica. The defendant pleaded in abatement of the first count that he had not had a preliminary examination for the offense charged in it, and had not waived the same; but the court, at the trial, overruled the plea; and, the defendant having pleaded not guilty to both counts, he moved that the district attorney be required to

elect on which count he would proceed to trial. The court denied the motion. The evidence on the plea in abatement showed an arrest and preliminary examination upon the charge of incest stated in the second count, and that the evidence then taken tended to show that the intercourse that had taken place with the prosecutrix was had by force and violence of the defendant, and against her will.

At the trial, the prosecutrix, Ida Porath, testified, after some preliminary details, to the particular transaction in question, which she said took place in July, 1891, in the hay mow of the defendant's barn, where she was pitching hay; that her brother threw the hay up to her, and the defendant came to help her. She was at that time thirteen years old, and sixteen at the time of the trial; and the record shows that she answered mainly by monosyllables, " Yes" or " No," and in a low tone, and the repetition of questions would indicate with some hesitation. After stating that the defendant came to help her pitch the hay further back, she was asked: *Q.* What did he do then? Did he lay his hands on you at all? *A.* Yes. *Q.* Well, after he laid his hands on you, what did he do then? *A.* He was trying to throw me down. *Q.* Did he throw you down? *A.* Yes. *Q.* What did he do then? Did he disturb your clothing in any way? *A.* Yes. *Q.* What did he do with it? What did he do with it? Well, speak right up. *The Court:* Go on, and tell what he did. *District Attorney:* That is what you are here for,— to tell what you know about it. *A.* He was going to pull up my clothes. *Q.* Well, did he pull up your clothes? *A.* Yes, sir. *Q.* What more did he do? Well, did he have sexual intercourse? (Objected to as leading. Objection overruled.) *A.* Yes, sir." She then testified that he told her he would kill her if she mentioned it; that she resisted him, pushed him back, and told him to stay back; that she cried out, and he held her with one arm around her and the other over her mouth; that she did all she could to prevent.

him; and also testified to actual penetration; that they were alone until her mother came into the barn, and listened, and called: "*Ernest Porath*, have you not got any sense?"

She testified that the defendant had had intercourse with her before, but not afterwards, and that she complained the next day after the transaction in the barn to her mother of it, and had told others about it; that she had a feeling against him, and wanted to get even with him; that she afterwards went away to Oconto with a young man named Keefort, and lived in a house there (not a bad house), because the defendant would not let her alone; that he had forbidden her going with Keefort; that while she lived in Oconto she went by the name of Ida Thompson; that she afterwards came back and lived with the defendant awhile, and after going away again she was arrested and confined in jail for two months for stealing; that she told the police officer and two of her brothers that she had been induced or instructed to make the complaint against the defendant, but that the charge was not true, and that the defendant had not had carnal intercourse with her; that she told the police officer so because he said, if she did not say so, she would be sent to the reform school; that the defendant was cruel to his children, and beat them with a stick, or kicked them, just as it came to his mind. "*Q.* They have been driven away from home by his beating them and threatening to kill them, have they not? Objected to as leading, etc. *The Court:* It shows why the girl should go away from home. Overruled. *A.* Yes, sir; he treated me in the same way; has beaten me with a club, and kicked me, prior to my leaving home."

The court allowed the district attorney, against defendant's objections, to show that Bertha Baker made complaint against the prosecutrix for stealing; that Bertha had been living at defendant's after he had parted with his wife; that the charge against witness was for stealing aprons and

rings; that she did steal some of them, but not all that
Bertha claimed, and she had gotten them all back again.
Bertha Baker, on behalf of the defendant, testified that the
prosecutrix told her, after the defendant's arrest on this
charge, two or three times, that she made the charge against
her father because she wanted to get some of his property;
that she asked her if she had been to see her father, and
she said, "No," and that she told her she would be sorry
after awhile, and she told witness to "go to h—l;" that she
told witness her father did not have anything to do with
her; that her mother and the folks talked her up to make
the charge. On cross-examination, this witness admitted
that she was the mother of an illegitimate child by one of
defendant's sons. She denied that she was living in adul-
tery with the defendant, but did sleep in the same room
with him, and the other children slept there, and he dressed
and undressed in it; that she was not married to nor trying
to marry him; that she had not held herself out to the pub-
lic as Mrs. Porath; that she had written letters in which
she had signed herself as Mrs. Porath; wrote one for fun,
which she signed Bertha Porath. The letter was identified,
and offered in evidence, and received, against defendant's
objections, to show her relations to the defendant and her
interest and bias as a witness. The letter stated the witness
was married long ago, and contained indecent and grossly
obscene statements. She denied that she had carnal inter-
course with the defendant, and testified that she worked for
him for wages, the same as any other girl.

The police officer testified that the prosecutrix denied to
him that the defendant had had sexual intercourse with her,
and said that she had said so because he had not been using
her well at home, and she got no clothes, and he had whipped
her. Her brothers Otto and Frank both testified that she
had said that the defendant had not had intercourse with
her; that she had stated that he had because she could not

Porath vs. The State.

get her clothes or bureau away from home, and she also said that he had not committed this crime.

The defendant testified in his own behalf, and denied positively that he had ever had intercourse with the prosecutrix, and denied in detail her statements as to what occurred at the barn, and that he ever, at the barn or elsewhere, attempted to take liberties with her or have connection with her; that Bertha Baker had worked for him; and, against the objection of his counsel, that they slept in the same room. The prosecutrix, being recalled, testified, among other things, to having on one occasion caught the defendant and Bertha Baker in bed together.

The court charged the jury, among other things: "There is some testimony in the case tending to show that the defendant may have been guilty of improper relations with the witness Bertha Baker. You will remember that the defendant is not being tried for any such offense. That testimony was admitted in the case to show the relations of the witness Bertha to the defendant, so as to throw light upon the credibility of her testimony; and you should only consider it and the facts disclosed by it as it has a bearing upon the question you are trying here,— that is, whether the defendant is guilty of the offense with which he stands charged."

The jury acquitted the defendant of the charge of rape in the first count, and found him guilty of the offense charged in the second count of the information. After motion for a new trial on various grounds, and a motion in arrest of judgment, had been overruled, the defendant was sentenced to ten years' imprisonment, and he sued out a writ of error, and assigned various errors referred to in the opinion.

*T. R. Hudd,* for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General* and *L. K. Luse,* Assistant Attorney General, and oral argument by *Mr. Luse.* They contended, *inter alia,*

Porath vs. The State.

that "it is common practice and not contrary to the rule anywhere to join counts all of which are for felonies in one indictment. But in England and in most of our states this right is limited by the rule of judicial discretion that on the trial the evidence of the prosecutor will be confined to one transaction, the differing counts being allowed only for the purpose of describing it in varying ways." 1 Bishop, Crim. Proc. § 449; *Thompson v. State*, 33 Tex. Crim. 472; *Butler v. State*, 91 Ala. 87; *Tanner v. State*, 92 id. 2; *Upshurs v. State*, 14 So. Rep. 541; *Comm. v. Goodhue*, 2 Met. 193; *People v. Rouse*, 2 Mich. N. P. 209; *Comm. v. Squires*, 97 Mass. 59; *Benson v. Comm.* 158 id. 164; *Comm. v. Jacobs*, 152 id. 276; *State v. Phelps*, 104 N. C. 786; *Lyons v. People*, 68 Ill. 275; *Herman v. People*, 131 id. 594. If the jury were convinced that there was not sufficient resistance to make out a case of rape, and were also convinced that the defendant had carnal knowledge of the body of the complainant, who was within the degree of consanguinity within which marriage is prohibited, it does not follow that he must be acquitted of any and all offenses. The defendant might be convicted of the crime of incest although he used force to accomplish his purpose. *Raiford v. State*, 68 Ga. 672; *Mercer v. State*, 17 Tex. App. 452; *Alonzo v. State*, 15 id. 378; *Norton v. State*, 106 Ind. 163; *People v. Rouse*, 2 Mich. N. P. 209; *People v. Barnes*, 2 Idaho, 148; *Comm. v. Bakeman*, 131 Mass. 577; 10 Am. & Eng. Ency. of Law, 341; *Yeoman v. State*, 21 Neb. 171.

PINNEY, J. 1. The plea in abatement to the first count of the information was properly overruled. It appeared that both counts were founded upon the same transaction, and were introduced to meet the legal aspects of the evidence as it might be produced at the trial, and in order that the defendant might not escape conviction of any offense which it might be found the defendant had committed by the

single transaction in question. The statute (sec. 4653, S. & B. Ann. Stats.) makes it the duty of the district attorney to inquire into and make full examination "of all facts and circumstances connected with any case of preliminary examination as provided by law, touching the commission of any offense whereon the offender shall have been committed to jail, or become recognized or held to bail, and to file an information setting forth the crime committed, according to the facts ascertained on such examination and from the written testimony taken thereon, whether it be the offense charged in the complaint on which the examination was had or not." The facts disclosed upon the preliminary examination of the defendant warranted the district attorney in filing an information against the defendant for rape committed against the person of his daughter, and he had the right to add a count for the crime of incest, under sec. 4582, charged in the complaint on which the examination was held, to meet the legal aspects of the evidence as it might be produced at the trial. *State v. Leicham*, 41 Wis. 574. Both counts were founded on the same transaction, and the defendant had in fact had a preliminary examination upon the charge of incest.

2. The two counts contained in the information were properly joined. The statute provides (R. S. sec. 4650) that "different offenses, and different degrees of the same offenses, may be joined in one information, in all cases where the same might be joined by different counts in the same indictment; and in all cases the defendant shall have the · same rights as to all proceedings therein as he would have had if prosecuted for the same offense upon indictment." Under the statute (sec. 4695), where any one indicted or informed against for felony shall on trial be acquitted by verdict of part of the offenses charged, and convicted of the residue, the court is required to receive and record the verdict; "and thereupon the person charged shall be adjudged

guilty of the offense, if any, which shall appear to the court to be substantially charged by the residue of such indictment and information, and shall be sentenced and punished accordingly." This provision applies to the case of a single count in which the lesser offense is included in or may constitute a part of the greater one, of which the defendant has been acquitted. Accordingly, it has been held in Massachusetts, where substantially the same statutory provisions exist, that one indicted for rape may be convicted of a simple assault. *Comm. v. Drum,* 19 Pick. 479; *Comm. v. Dean,* 109 Mass. 349. And in general the rule is, in states where similar statutory provisions exist, that counts for a kindred line of offenses, if the subject of indictment or information, may be joined. It is always allowed where several counts are required for the purpose of meeting the evidence as it may transpire on the trial, where all the counts are substantially for the same offense or founded on the same transaction. *Comm. v. McLaughlin,* 12 Cush. 612, 614; *People v. Rynders,* 12 Wend. 426; 1 Bish. Crim. Proc. (3d ed.), §§ 426, 427, 446; *Comm. v. Jacobs,* 152 Mass. 281; *Butler v. State,* 91 Ala. 87. The sentence or conviction is or may be separate on each count. If the varying counts comprehend only one transaction, their joinder and one trial on all are not objectionable, since the form of the verdict is under the authority of the court, and sentence or conviction is or may be separate on each count. 1 Bish. Crim. Proc. (4th ed.), §§ 425, 453. Nor does it vary the case that one offense is a felony and the other a misdemeanor, one being a part of the same transaction with the other. Whart. Crim. Pl. (9th ed.), §§ 284, 291; *Reg. v. Ferguson,* 6 Cox, Crim. Cas. 454. Felonies and misdemeanors forming a part of the development of the same transaction may be joined. *Hunter v. Comm.* 79 Pa. St. 503; *Hawker v. People,* 75 N. Y. 487; *Comm. v. Costello,* 120 Mass. 358. The court, to protect the defendant from being prejudiced or embarrassed in his de-

fense by such joinder, may quash part of the counts, or put
the prosecutor to elect, or otherwise, in the exercise of a
sound judicial discretion. In the case of *State v. Shear*, 51
Wis. 460, relied on by the plaintiff in error, it was held that
under an information of a single count, charging the de-
fendant with the crime of rape, but not that it was com-
mitted on the person of a single woman, the defendant
could not be convicted of fornication. In that case it was
said: "Rape cannot be charged in one count and incest in
another." And the case of *State v. Thomas*, 53 Iowa, 214,
was cited in support of the remark. But in that case two
of the five judges dissented. So, too, in the case of *State v.
Hooks*, 69 Wis. 182, in which *State v. Shear* is referred to,
there was but a single count for rape; but neither of these
cases involved the question of what counts might properly be
joined. We therefore hold that in the present case, founded
on a single transaction, a count for incest may be joined with
one for rape.

3. Whether the court should have required the district
attorney to elect upon which count of the information he
would proceed is a question which addressed itself largely
to the discretion of the court; and it having appeared upon
the trial of the plea in abatement that there was but one
criminal transaction involved, and that the joinder of two
counts was intended only to meet the different legal aspects
which the evidence might give the case, we think the court
rightly refused the request that the district attorney should
make an election of counts. 1 Bish. Crim. Proc. (3d ed.),
§§ 457, 462; *State v. Leicham*, 41 Wis. 566, 577. We are un-
able to see how the defendant can be said to have been
prejudiced in making his defense by the course pursued in
the present case, either as to the joinder of counts or in re-
spect to the question of election. The questions already
considered, as well as the point made as to the sufficiency
of the first count, have ceased to have any practical signifi-

cance, as the defendant has been acquitted of the charge of rape.

4. It is assigned for error that the court allowed leading questions to be put to the prosecutrix, as noticed in the statement, to the prejudice of the defendant. Whether leading questions should be permitted rests very much in the sound discretion of the court, and rulings in respect to them are not the subject of exception, unless there has been an improper exercise of discretion. *Barton v. Kane*, 17 Wis. 37; *Proper v. State*, 85 Wis. 626. The particular circumstances attending the examination of the witness lead us to think that the defendant was not prejudiced by the rulings in relation to these questions, and that their allowance was not error for which there should be a reversal; but it would have been quite as well, in view of the hostile feeling of the witness to the defendant subsequently disclosed, if the rule against leading questions had been applied more strictly.

5. It is contended that as to the crime of incest the prosecutrix must be regarded as an accomplice of the defendant, in that the crime implies consent on the part of the female, and that there should not have been a conviction upon her uncorroborated testimony. If the prosecutrix in this case is regarded as the defendant's accomplice in the commission of the crime of which he was convicted, it was discretionary with the trial court whether to direct an acquittal or not, and a judgment founded on such uncorroborated testimony alone will not be reversed. *Black v. State*, 59 Wis. 471. The court was not required to direct an acquittal on that ground, or to give any instructions to the jury as to the effect of the testimony of the prosecutrix. While it was proper that the court should have instructed the jury on the subject, error cannot be assigned in the present state of the record for the failure or omission, for want of any proper request or exception on the subject. *Knoll v. State*, 55 Wis. 249; *Clifford v. State*, 58 Wis. 477; *Sullivan v. State*, 75 Wis. 650; *Winn*

*v. State,* 82 Wis. 571. We cannot say, upon the evidence as contained in the record, that it does not support the conviction, or that an acquittal should have been directed. The question of guilt of the defendant and the credibility of the witnesses was one peculiarly for the jury, and they evidently believed from the evidence that sexual intercourse had taken place between the defendant and the prosecutrix, but that, while she did not consent, her resistance was not as strenuous and effective as it might have been under the circumstances. The fact that the defendant used a certain amount of force to overcome the resistance actually made will not enable him to escape punishment for incest, the parties being within the prescribed degree of consanguinity, if the force and resistance used were not sufficient to constitute rape. It does not necessarily follow in such cases that the female is to be regarded as an accomplice, and particularly in a case like the present, in view of the relation between the parties and the coercive authority of her father over her. *Raiford v. State,* 68 Ga. 672; *Norton v. State,* 106 Ind. 163. If, in the commission of the incestuous act, the female was the victim of force, fraud, or undue influence, so that she did not act voluntarily and join in the commission of the act with the same intent that the accused did, then she ought not to be regarded as an accomplice. In all such cases, where it is to be proved inferentially, the question of accompliceship is one of fact for the jury. Whart. Crim. Ev. § 440; *Mercer v. State,* 17 Tex. App. 452.

6. The instruction to the jury upon the effect to be given to the evidence tending to show that the defendant may have had improper relations with the witness Bertha Baker is, we think, misleading and erroneous. The evidence on that subject was very unfavorable to the defendant, and consisted of matters that appeared to have occurred after the commission of the alleged offense for which he was on trial. The court instructed the jury that they would remember

Porath vs. The State.

that the defendant was not being tried for having improper relations with Bertha Baker; that that testimony was admitted to show the relations of Bertha to the defendant, so as to throw light upon the credibility of her testimony; and that they "should only consider it and the facts disclosed by it as it has a bearing upon the question you are trying here,— that is, whether the defendant is guilty of the offense with which he is charged." This instruction is so clearly erroneous that we suppose that it was the result of inadvertence. A greater latitude of proof as to other like occurrences is allowed in cases of sexual crimes; and in a prosecution for adultery evidence of previous acts of improper familiarity, amounting to adultery, between the same parties, was held competent, either in corroboration of witnesses for the prosecution or to show the disposition of the parties to commit the crime. *Proper v. State*, 85 Wis. 630, and cases cited. It cannot, we think, be maintained that the subsequent improper relations of the defendant with Bertha Baker would be competent evidence to show that he had committed the offense of rape or incest for which he was on trial, or to show that the defendant had a tendency even to commit such crimes. Evidence of what occurred in these respects subsequently, at another time or place, with another party, would certainly not be competent evidence. The misleading and injurious tendency of the instruction is such that we feel bound to reverse the conviction and grant a new trial.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded to the circuit court for a new trial; and, to that end, it is ordered that the warden of the state prison, in whose custody the said defendant, *Ernest Porath*, now is, do deliver him into the custody of the sheriff of the county of Brown, who is required to keep him in his custody until discharged therefrom according to law.