PURPERO, Plaintiff in error, vs. THE STATE, Defendant in error.

*March 12—June 21, 1926.*

*Rape: Degree of resistance required of woman: Evidence: Sufficiency: Non-prejudicial error.*

1. To constitute rape there must be not only entire absence of mental consent or assent, but there must be the most vehement exercise of every physical means or faculty within the woman's power to resist penetration of her person, and this must be shown to persist until the offense is consummated. p. 364.
2. The power of resistance need not necessarily be overcome by superior physical force, it being sufficient if it is overcome by fraud or fear of serious personal injury, or if the physical resistance becomes so useless as to warrant it ceasing upon that ground.  p. 365.
3. The evidence in this case is *held* sufficient to sustain a conviction of rape and to justify the jury in finding that the prosecuting witness resisted the defendant to the utmost. p. 368.
4. Failure of the court to instruct that evidence of other convictions is admitted solely as bearing on defendant's credibility is not error in the absence of a request to so instruct. p. 368.
5. Under sec. 274.37, Stats., a conviction will be affirmed where it is not apparent from an examination of the whole record that any substantial right of the defendant was adversely affected.  p. 368.

ERROR to review a judgment of the municipal court of Milwaukee county: GEORGE A. SHAUGHNESSY, Judge. *Affirmed.*

The plaintiff in error, hereinafter referred to as the defendant, was found guilty by a jury in the municipal court of Milwaukee county on the charge of having committed the crime of rape upon one Dorothy Bohl. He was thereupon sentenced to the term of four years in the state penitentiary at Waupun. From the judgment of the court the defendant sues out a writ of error to have the record reviewed in this court.

For the plaintiff in error there was a brief by *Thomas E. Leahy* and *Arthur H. Bartelt,* both of Milwaukee, and oral argument by *Mr. Bartelt.*

For the defendant in error there was a brief by the *Attorney General, Eugene Wengert,* district attorney of Milwaukee county, *George A. Burns,* special assistant district attorney, and *C. Stanley Perry,* assistant district attorney, and oral argument by *Mr. Burns* and *Mr. Perry.*

The following opinion was filed April 6, 1926:

CROWNHART, J. The defendant was twenty-five years of age, weighed 170 pounds, married, and lived with his father in Milwaukee. The prosecuting witness was twenty-four years of age, weighed 125 pounds, and was lame from birth. The act as alleged took place in an automobile. The principal error alleged goes to the claim that the evidence did not show that the prosecuting witness resisted ravishment to the utmost, within the rules laid down by this court. As said in *Brown v. State,* 127 Wis. 193, 199, 106 N. W. 536:

"Not only must there be entire absence of mental consent or assent, but there must be the most vehement exercise of every physical means or faculty within the woman's power to resist the penetration of her person, and this must be shown to persist until the offense is consummated. We

need not mention the exception where the power of resistance is overcome by unconsciousness, threats, or exhaustion, for, in this case, there is no proof of any of those things. Further, it is settled in this state that no mere general statements of the prosecutrix, involving her conclusions, that she did her utmost and the like, will suffice to establish this essential fact, but she must relate the very acts done, in order that the jury and the court may judge whether any were omitted."

The court here uses strong language to indicate that consent must be negatived on the part of the female by the utmost resistance of which she is capable.   Courts are moved to express the rule in such vigorous terms by reason of the fact that the crime is usually committed where there are no witnesses save the parties to the offense, and conviction may often rest upon the testimony of the female alone.   The exception to the rule indicated in the above quotation is well stated in *Bohlmann v. State,* 98 Wis. 617, 74 N. W. 343, where it is said:

"The power of resistance need not necessarily be overcome by superior physical force; if overcome by fraud or fear of serious personal injury, or if physical resistance becomes so useless as to warrant it ceasing upon that ground, there being no consent or submission in the sense of mental operation, the essential of the accomplishment of the act by force and against the will of the outraged party is fully satisfied.   The law as thus laid down is too well understood and has been too frequently applied in this court to require discussion or call for any citation of authority."

The circumstance of the offense in this case is strange and unusual.   Dorothy Bohl was a stenographer, living with her father and sister in the city of Milwaukee.   On the 2d of January, 1925, Helen Cickanowski, a friend of Dorothy, asked Dorothy to go out and meet a party of her male friends for an evening's entertainment.   Dorothy consented if her niece, Pearl Barlow, sixteen years of age, should be invited to go along.   Helen arranged the party

for the next night, when the three young women met by appointment Charlie Purpero, on the corner of Wisconsin and Jefferson streets, about 8:30 in the evening. Charlie took them to a soft-drink parlor in the Third ward. There they met the defendant, *Carlo Purpero*. At this point, Willie Gennero, with a large Moon car, inclosed with curtains, appeared on the scene and the party was taken from one place to another where they had dancing and refreshments until some time after 12 o'clock, when Dorothy and her niece, Pearl, asked to be taken home. They got into the Gennero car, the defendant and his brother Charlie sitting in the back seat with Helen and Dorothy sitting on their laps, Pearl sitting in the front seat with Willie Gennero. Gennero drove them around the city until he came to a cul-de-sac in an outlying neighborhood, at which place he stopped his car. In the meantime the defendant had been soliciting Dorothy to have intercourse with him. She became frightened, resisted his importunities, and screamed. Defendant told her not to do that again or he would strike her across the mouth. He ordered his brother to get up off of the seat and get out of the car. His brother did so, and Helen stood up. He then threw Dorothy on her back across the seat, and attempted to ravish her. She screamed and struggled and cried, and Pearl started to get out of the car, when defendant ordered her to get back in and told her if she did not they would start working on her next.

The struggle in the back seat went on for quite a period of time, some of the witnesses putting it as long as three quarters of an hour. When the struggle was over, Gennero started to drive toward home. He let the defendant out of the car, and defendant, instead of going to his home where his wife and father lived, went to the home of an aunt, a short distance away, and remained there over night and the next night. Gennero drove to a filling station, where there was a policeman. Dorothy in the meantime had moved

to the front seat.   When the policeman was signaled, he came and opened the door of the car, and Dorothy fell out, unconscious.   The policeman learned of her troubles from Pearl, and sent both girls to the station and later to the hospital.   At the hospital it was learned by physical examination that Dorothy had been the subject of intercourse.

The police tried to find the defendant that night and the next day, but he was not at home nor at his usual haunts. However, he gave himself up the following day, and he was informed against and his trial followed.

The foregoing is a very brief summary of the principal facts.   Much of the details is purposely omitted for obvious reasons.   The defendant was a strong, powerful man. He was brutal in his language and in his attitude towards Dorothy when he became aroused.   He threatened to assault her if she made outcry.   Evidently he had Gennero in his employ, and Gennero refused to interfere.   Pearl had been threatened with assault if she did not remain quiet. Helen had arranged the date, and was absolutely passive with reference to the assault.   She may have been an accomplice.   They were in a lonely part of the city, with apparently no help in sight.   The testimony of the prosecutrix and of Pearl was to the effect that she struggled to her very utmost until she was physically overcome, and that she never did consent to intercourse.

. But defendant, on the trial, denied the intercourse entirely.   He said that he solicited intercourse but that Dorothy told him that she was a decent girl and refused, and he believed her.   He admits that Dorothy screamed and that he threatened her in order to keep her quiet; also that he held her down in the back seat, but he denies absolutely the intercourse or attempt at intercourse.

In the argument of this case counsel, advisedly we think, did not deny the fact of intercourse, but relied upon the rule of utmost resistance on the part of the female, and

claimed that the evidence did not satisfy this rule. The jury was composed of twelve men, residents of Milwaukee. They heard and saw the witnesses, and were in a better position to judge than is this court as to whether or not the prosecutrix was telling the truth and whether or not she resisted the defendant to the utmost. We think there is sufficient evidence to sustain the verdict. The jury may well have found that the defendant dominated the party absolutely, and that they were either in collusion with him or in fear of him. Certainly Dorothy and Pearl became very much frightened. The defendant used vile and indecent language toward them and acted in a threatening manner. There can be no question but that the jury were justified in finding that Dorothy struggled against her ravisher to the last, and that she was utterly exhausted in the end.

Defendant had been convicted of the offense of lewd and lascivious behavior and had served a sentence in the house of correction therefor; also, he had been convicted of the offense of pointing and aiming a revolver, and the records of these convictions were admitted in evidence as bearing on defendant's credibility.

Defendant claims error for the reason that the court did not instruct the jury that such evidence was admitted solely as bearing on the credibility of the defendant. No request for such instruction was made, and it has been held that, in the absence of such request, error cannot be assigned for failure to so instruct. *Cupps v. State,* 120 Wis. 504, 97 N. W. 210, 98 N. W. 546.

And it is not apparent from an examination of the whole record that any substantial right of the defendant has been adversely affected. Sec. 3072*m* (now sec. 274.37), Stats.

There is some criticism made of the charge of the court to the jury. We have given the matter careful attention, and are satisfied that the charge on the whole was fair and comprehensive and contained no prejudicial error.

*By the Court.*—The judgment of the municipal court is affirmed.

· ESCHWEILER, J., dissents.

A motion for a rehearing was denied, without costs, on June 21, 1926.